EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff,

v.

COLGATE–PALMOLIVE CO.,
Defendant.

No. 81 Civ. 8145 (RWS).

United States District Court,
S.D. New York.

May 11, 1984.

**1342**

E.E.O.C., New York City, for plaintiff; Robert L. Williams, Regional Atty., Jean L. Schmidt, Supervisory Trial Atty., Alane C. Probst, Senior Trial Atty., New York City, of counsel.

Kelley, Drye & Warren, New York City, for defendant; Eugene T. D'Ablemont, Martin D. Heyert, Paul L. Bressan, Israel E. Kornstein, New York City, of counsel.

## OPINION

SWEET, District Judge.

Defendant Colgate-Palmolive Company ("Colgate") has moved for summary judgment against or dismissal of the complaint of plaintiff Equal Employment Opportunity Commission ("EEOC"). For the reasons stated below, the motion to dismiss is denied with leave to renew and the motion for summary judgment is granted in part and denied in part.

The EEOC brought this action alleging age discrimination by Colgate in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1) & (2). The action resulted from the EEOC's investigation of Colgate's sales force in August 1979. The complaint alleges the following violations of the ADEA:

(1) the constructive discharge of Unit Manager ("Salesperson") Marvin Lindsey ("Lindsey") on March 1, 1978 in Memphis;

(2) the demotions of District Manager William Burke ("Burke") in January 1979 in Baltimore and of Key Account Manager John Bradford ("Bradford") in October 1979 in New Jersey;

(3) the placing on probation of Salesperson William Dettmore ("Dettmore") in October 1978 in Boston and of Salesperson Frank Rovelli ("Rovelli") in January 1980 in New Jersey;

(4) the denial of promotional opportunities occurring on three different management levels at different times in different locations—three in 1978, including one on April 3, 1978, and three in 1979—to members of the protected age group. The EEOC has identified Lionel Branscomb ("Branscomb"), James Short ("Short"), James Kilcommons ("Kilcommons"), Raymond Gallup ("Gallup"), Ellwood Cornog ("Cornog") and Leroy

James ("James") as candidates for promotion to these six jobs.

All alleged violations, except Lindsey's discharge, occurred in Colgate's Personal Care Products Division, Northeast Region.

Colgate has moved for dismissal of the complaint, or for a stay of further proceedings, on the ground that the EEOC lacks authority to maintain the lawsuit. Alternatively, Colgate has moved for summary judgment on the ground that there is no evidence of discrimination against any of the alleged victims or, alternatively, that the claims based on Lindsey's termination and the denial of a promotion on April 3, 1978 are barred by the statute of limitations. Finally, Colgate has moved to strike the EEOC's demand for a jury trial.

**One-House Legislative Veto**

Colgate maintains that the EEOC lacks authority to bring this suit because President Carter's Reorganization Act transfer of ADEA investigative and enforcement authority from the Department of Labor to the EEOC was subject to the one-house legislative veto held unconstitutional in *Immigration & Naturalization Service v. Chadha*, — U.S. —, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). The Fifth Circuit Court of Appeals, in *EEOC v. Hernando Bank*, 724 F.2d 1188, 1190 (5th Cir.1984), and numerous district courts in decisions cited by the EEOC have rejected this argument on the ground that the Reorganization Act's one-house veto provision is severable, although, of course, there is distinguished authority to the contrary. *See EEOC v. Pan Am World Airways*, 576 F.Supp. 530, 33 Fair Emp.Prac.Cas. 260 (S.D.N.Y.1983) (Brieant, J.). The Court of Appeals for this Circuit has not addressed the effect of *Chadha* in this context but has recently granted the defendant's petition for an interlocutory appeal of the Honorable John E. Sprizzo's decision sustaining the EEOC's authority to enforce the ADEA. *See EEOC v. CBS*, No. 81–2781 (S.D.N.Y. Jan. 24, 1984), *appeal docketed*, No. 84–6063 (2d Cir. Feb. 28, 1984). In these circumstances, yet another analysis of the implications of *Chadha* would not

seem necessary, and, upon the Fifth Circuit authority cited above, the motion to dismiss on *Chadha* grounds is denied with leave to renew following the Court of Appeals' decision in *EEOC v. CBS*. In view of the age of this case, discovery will go forward. However, trial will await the Court of Appeals' decision in *EEOC v. CBS*.

**Statute of Limitations**

Colgate has moved for summary judgment on the claim relating to Lindsey's termination on March 1, 1978 and the alleged denial of a promotion to an employee in the protected age group on April 3, 1978 on grounds of the statute of limitations. The EEOC commenced this action on December 31, 1981. There is a three-year statute of limitations for wilful violations of the ADEA, *see* 29 U.S.C. § 255(a), and neither party contends that this limitation period is not applicable. The statute contains a tolling provision:

> For the period during which [the EEOC] is attempting to effect voluntary compliance with requirements of this chapter through informal methods of conciliation, conference, and persuasion pursuant to subsection (b) of this section, the statute of limitations as provided in section 255 of this title shall be tolled, but in no event for a period in excess of one year.

29 U.S.C. § 626(e)(2).

The EEOC's conciliation efforts were described in this court's opinion of August 12, 1983 denying Colgate's motion concerning compliance with the conciliation requirement of 29 U.S.C. § 626(b). There is no dispute between the parties as to the events relating to conciliation:

(1) On December 11, 1980, the EEOC informed Colgate by letter that it wished to initiate conciliation efforts.

(2) On May 11, 1981, the EEOC sent a letter to Colgate stating:

> At our April 23, 1981 meeting, we responded to your March 31, 1981 submission and renewed again our proposals for a conciliatory resolution of this case.

> To date you have failed to respond to these proposals. Your failure to re-

spond to our proposals and your failure to forward the salary documents that we have requested seem to indicate a lack of interest in a conciliatory resolution of this matter.

This is to inform you that if we do not receive copies of the salary "Employee Profiles" and specific responses to our proposals for conciliation by May 18, 1981, our files will be referred to our legal unit with this unit's recommendation that legal action be commenced.

(3) On May 13, 1981, Colgate submitted to the EEOC a statistical analysis regarding the allegations the EEOC had made at the April 23 meeting.

In its April 21, 1983 memorandum in opposition to Colgate's previous motion to dismiss, the EEOC described the situation after the May 13, 1981 letter:

Because Defendant did not respond to EEOC's conciliation proposals or make any proposals on how it was prepared to come into compliance with the ADEA the New York District Office sought approval from EEOC's Commission in Washington to file suit. EEOC viewed conciliation attempts as having failed. (EEOC memorandum at 6).

The memorandum also stated:

EEOC attempted to conciliate with Defendant from January 7, 1981 until May of 1981. However, from the time EEOC issues its letter informing Defendant that it had discovered violations of the ADEA on December 11, 1980 until May of 1981 when EEOC realized that any further attempts to conciliate would prove fruitless, Defendant continually refused to address any of EEOC's proposals to bring Defendant into compliance with the ADEA. Defendant did not even submit any proposals of its own. (EEOC memorandum at 7–8).

The EEOC contends that the tolling period ran the maximum one year, from December 11, 1980 until December 12, 1981. In support of this contention, the EEOC states that it

did not stop conciliation efforts in May 1981 but merely stopped making proposals to resolve the violations since no proposals were forthcoming from defendant. EEOC stopped making offers to the wind. To this date Defendant has never made any offers to resolve the alleged violations. EEOC never sent Defendant a letter stating conciliation had failed. EEOC would have entertained an offer by Defendant up to the date EEOC filed its complaint.

The EEOC also cites its Compliance Manual ("Manual"), ¶ 1987.44, § 260.4, which was in use in 1981:

**Period of Conciliation and transfer to Legal Unit—**

Underlying the conciliation requirement is the Commission's statutory obligation to take reasonable, affirmative action to attempt to resolve alleged violations short of litigation. However, in many cases a respondent's uncooperative attitude may render meaningful conciliation impossible or may result in impasse. When there is doubt whether the ADEA § 7(b) conciliation requirement has been met by the EOS's efforts, the Legal Unit should be consulted. If conciliation has reached an impasse or it appears that a conciliation agreement will not be obtained, the file should be referred to the Regional Attorney for recommendation of litigation. (See § 266 regarding notice to respondent.) Because the statute of limitations for the government to file suit is tolled for one year after commencement of conciliation, efforts to settle may continue during the period that the decision to file suit is being made. The Commission should remain available to conciliate up to the date the lawsuit is actually filed.

■ The court holds that the conciliation period extended for only five months— from December 1980 to May 1981. The statute is tolled only when the EEOC "is attempting to effect voluntary compliance ... through informal methods of conciliation, conference, and persuasion .... but in no event for a period in excess of one

year." § 626(e)(2). The language of the section—especially the use of the word "attempting"—indicates a requirement that the EEOC itself actively seek conciliation. Even though, as the EEOC points out, Colgate never made a settlement offer after May 1981, and even if it is true that the EEOC "would have entertained" such an offer, the section's requirement of attempts by the EEOC to conciliate has not been met. Indeed, the EEOC's assertion that it would have entertained a settlement offer after May 1981 is belied by the EEOC's statement in its previous memorandum that by May 1981 it viewed conciliation attempts as having failed.

■ The EEOC's position on this question suggests that the tolling period ends only when the EEOC sends a letter to a potential defendant stating that conciliation has failed and otherwise runs for an automatic one year after conciliation begins. This position not supported by the statute or the cases interpreting it. *See EEOC v. State of Kansas*, 28 Fair Emp.Prac.Cas. (BNA) 1036, 1037–38 (D.Kan.1982); *Pfister v. Allied Corp.*, 539 F.Supp. 224, 227 (S.D. N.Y.1982); *Vuksta v. Bethlehem Steel Corp.*, 540 F.Supp. 1276, 1280 n. 13 (E.D. Pa.1982), *aff'd mem.*, 707 F.2d 1405 (3d Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 121, 78 L.Ed.2d 119 (1983). Even if the Manual implies a different interpretation, it is not controlling over the clearly worded statute. In addition, the EEOC's apparent contention that a letter from it to a defendant is needed to end the tolling period does not help the EEOC here, since the EEOC's May 11, 1981 letter notified Colgate conciliation would end unless certain conditions were met.

Because the statute was tolled for only five months, the Lindsey claim and the claim based on the April 3, 1978 denial of promotion are barred by the statute of limitations, and they are hereby stricken from the complaint.

**Lack of Evidence**

■ Colgate has also moved for summary judgment on the ground that there is no evidence that Colgate discriminated against the individual alleged victims or had a policy of discrimination in hiring and promotion. The evidentiary scheme for discrimination cases is as follows:

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." [*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)]. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.,* at 804 [93 S.Ct. at 1825].

The nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). This scheme has been applied to age discrimination cases in this Circuit. *See Stanojev v. Ebasco Services, Inc.,* 643 F.2d 914, 919–20 (2d Cir.1981). Although summary judgment procedures should be sparingly applied where, as in discrimination actions, intent and state of mind are significant, where a plaintiff offers no evidence to sustain his ultimate burden of proving discriminatory intent, summary judgment is appropriate. *See, e.g., Nash v. Jacqueline Cochran, Inc.,* 548 F.Supp. 676, 678–81 (S.D. N.Y.1982).

Colgate has submitted the depositions of each of the alleged victims of discrimination. Some of the victims stated at their deposition that they had no evidence of age discrimination. Some stated that they had received low performance ratings and that

their superiors had criticized their work. However, Colgate has not submitted documentary or other direct evidence of these employees' poor performance, and the EEOC states that it disputes Colgate's characterization of certain employees' performance appraisals.

■ In support of its allegations that Colgate had a policy of discriminating on the basis of age in hiring and promotion, the EEOC has submitted the following evidence: (1) The testimony of Donald Montuori, a Colgate employee who is not one of the alleged victims, that he has seen a document written by a Regional Manager to the Colgate National Sales Manager that contained a description of each Salesperson, with a notation next to certain names—not those of the victims named in this complaint—that they were not eligible for promotion because of age; (2) Burke's testimony that he had been told by someone in management that he had to request permission to hire anyone over age 40; (3) the fact that none of the 77 persons hired in the personal care products division were above age 34. The EEOC has also submitted Burke's notes allegedly taken at the meeting in which he was told he would be demoted. The notes indicate that Burke's superiors told him that at his "stage in life they didn't think I wanted to move" and "a man 35 has a better chance than you if all things were equal because he has more years to offer the company because he is ['that much younger than you' or, 'younger than you']."

In view of this direct evidence of age bias and in view of Colgate's failure to submit direct evidence of legitimate, nondiscriminatory reasons for the actions at issue, summary judgment is denied at this time, enough evidence having been submitted to create a triable issue.

### EEOC's Right to a Jury Trial

■ Colgate has also moved to strike the EEOC's demand for a jury trial. The ADEA grants a right to jury trial to any "person" bringing a claim for damages. 29 U.S.C. § 626(c). Whether the EEOC has such a right turns on whether it qualifies as a "person" as defined in 29 U.S.C. § 630.

While the Court of Appeals for this Circuit has not addressed this question, it appears that every court that has confronted the question has held that the EEOC has such a right. *See, e.g., EEOC v. Brown & Root, Inc.,* 725 F.2d 348 (5th Cir.1984); *EEOC v. Corry Jamestown Corp.,* 719 F.2d 1219 (3d Cir.1983) (see cases cited at 1223 & n. 4); *EEOC v. Consolidated Edison,* No. 80–1292 (S.D.N.Y. Aug. 27, 1981). Colgate has not presented the court with authority which compels an opposite holding and, accordingly, the EEOC's jury demand will not be stricken.

Discovery will proceed in accordance with a schedule to be set when the parties convene to argue the discovery motion that has been noticed, except that the trial will not commence until the Court of Appeals issues a decision in *EEOC v. CBS,* after which decision Colgate may renew its motion to dismiss on the grounds of *Chadha.* The Lindsey claim and that based on the April 3, 1978 promotional opportunity will be dismissed.

**IT IS SO ORDERED.**