**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**GENERAL DYNAMICS CORPORATION, Defendant.**

**No. CA4:89–604–A.**

United States District Court, N.D. Texas, Fort Worth Division.

May 5, 1994.

Jeffrey Charles Bannon, Suzanne Michel Anderson, Dale Howard Jurgens, Tod J. Barrett, Robert A. Canino, Jr., E.E.O.C., Dallas Dist. Office, Dallas, TX, for plaintiff.

Kent Royce Smith, Law Snakard & Gambill, Fort Worth, TX, Gary Lynn Ingram, Bonnie L. Horinek, Jackson & Walker, Fort Worth, TX, for defendant General Dynamics Corp.

## MEMORANDUM OPINION AND ORDER

McBRYDE, District Judge.

By opinion and judgment issued as mandate on September 21, 1993, the United States Court of Appeals for the Fifth Circuit remanded this action to the district court for further proceedings. Having considered the opinion of the Fifth Circuit and the memoranda of plaintiff, Equal Employment Opportunity Commission, and defendant, General Dynamics Corporation, regarding the further proceedings that should be had, the court has determined that a ruling should be made with regard to the issues of conciliation and limitations and that any claims remaining to be tried should be set for trial.

### I.

#### History

On October 31, 1991, defendant filed a motion for summary judgment on the ground that all claims asserted by plaintiff are barred by limitations. Thereafter, plaintiff filed its response, and defendant filed its reply to the response. At a hearing held November 27, 1991, the court briefly discussed the pending motion with counsel and noted that the motion remained under advisement. During the trial of the action, the court and counsel again discussed the status of the motion for summary judgment, at which time the court confirmed with counsel that the issues presented—conciliation and limitations—would be tried to the court and that the court would make its ruling based on the summary judgment evidence on file as well as the evidence presented at trial.[1] At a hearing conducted January 31, 1994, the parties once again confirmed their intent and understanding that the issues of conciliation and limitations would be decided by the court.[2] As the court noted in its December 23, 1991, order, because of the jury verdict, there was no need for the court to resolve the matters of conciliation and limitations. Now that the jury verdict has, in effect, been set aside, the court will consider the issues not previously resolved.

### II.

#### Propriety of Ruling on Issues of Conciliation and Limitations at this Time

None of the reasons given by the Fifth Circuit for setting aside the court's judgment bear on the issues raised by the motion for summary judgment. See E.E.O.C. v. General Dynamics Corp., 999 F.2d 113 (5th Cir. 1993). The statistical data, expert testimony, and evidence regarding persons similarly situated to Willis have nothing to do with the issues of conciliation and limitations. That is, had the court ruled alternatively at the conclusion of trial and made findings and conclusions on conciliation and limitations, a finding by the Fifth Circuit that the court erred in imposing discovery sanctions would not support a reversal of the rulings, findings, and conclusions regarding conciliation and limitations. Once there was a reversal of the judgment on the grounds given by the

1. The matter of the handling of conciliation and limitations issues was discussed by the court and counsel at pages 11–15, 18–21, 201–212, and 281–282 of Volume I the trial transcript (hereinafter "12/16/91 Tr.").

2. Again, by joint report filed March 30, 1994, the parties confirmed:

The parties agreed at the hearing of January 31, 1994, that the Court shall make the determinations as matters of law, on the issues of conciliation and tolling of the statute of limitations. To that end, the parties agreed that all evidence necessary for the Court to make such determinations have been fully and adequately presented in Motions for Summary Judgments and Memoranda in Response which were previously filed with the Court.

Joint Report on Dates for Accrual of Action of William Willis and Similarly Situated Class Members at 1, n. 1.

Fifth Circuit, determinations by this court of these unresolved issues became matters of unfinished business to be dealt with on the basis of the record that already has been made.

## III.

### The Pertinent Evidentiary Facts

As required by Rule 5.2(a) of the Local Rules of the United States District Court for the Northern District of Texas, each party has listed the facts upon which it relies in support of its position with regard to conciliation and limitations. There is no dispute as to evidentiary facts material to those issues.[3] The dispute is over the factual and legal conclusions to be drawn from those evidentiary facts.

The pertinent facts are, and the court finds, that:

On August 12, 1987, William Willis ("Willis") filed a charge of age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 ("ADEA")[4] against defendant. In his charge, Willis listed April 2, 1987, as the "date most recent or continuing discrimination took place."

On March 15, 1989, plaintiff issued a "Determination on Review of ADEA Charge" which provided in pertinent part:

> Section 7(b) of the ADEA requires that before instituting any legal action, EEOC attempt to eliminate the alleged unlawful employment practice by informal methods of conciliation, conference, and persuasion. This Letter of Determination serves as notification that EEOC is prepared to begin conciliation in accordance with Sec. 7(b). A representative from the Commission's Dallas District Office will be contacting the parties to begin the conciliation process.

> If the Respondent declines to enter into settlement discussions, or if the Commission's representative for any other reason is unable to secure a settlement acceptable to the Director of the District Office, the Director shall so inform the parties in writing and advise them of the court enforcement alternatives available to the Charging Party and the Commission.

> . . . .

> Section 7(e)(2) of the ADEA provides that the statute of limitations applicable to the filing of a lawsuit shall be tolled for a period of up to one year for conciliation. This tolling period begins upon issuance of this Letter of Determination.

Defendant's Motion for Summary Judgment and Brief in Support Thereof ("Defendant's Motion"), Ex. "1" ("Jones Affidavit"), Attachment A. After issuing the determination letter, plaintiff did not attempt to contact defendant until April 4, 1989. On that date, plaintiff's investigator, Jean Williams ("Williams"), called the office of defendant's labor counsel, Phillip Jones ("Jones"), "for the purpose of initiating the conciliation process." Plaintiff's Response to Defendant's Motion for Summary Judgment, Ex. C, Affidavit of Jean Williams, ¶ 2. Williams was informed that Jones was out of town.

On May 24, 1989, Williams spoke for the first time with Jones and discussed with him possible conciliation. On June 20, 1989, Williams and Jones had another telephone conversation. By letter dated June 20, 1989, Jones confirmed statements made by him in the telephone call to Williams that defendant was extending to Willis an offer of a position in its Internal Audit Department and that the offer would be considered rejected if defendant did not receive a response in ten days. On June 22, 1989, plaintiff sent a letter acknowledging receipt of the offer and

---

**3.** To the extent that there is any dispute with regard to the facts set forth in this section III, the court, having heard and considered the evidence, is finding that these facts exist. All facts found by the court, as stated in this memorandum opinion and order, are found by the preponderance-of-the-evidence standard.

**4.** All references to the ADEA in this memorandum opinion and order are to the ADEA as it

existed at the time suit was filed. See *Landgraf v. USI Film Prods.*, —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); *Johnson v. Uncle Ben's Inc.*, 965 F.2d 1363, 1374 (5th Cir.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 1641, 128 L.Ed.2d 362 (1994) (each holding that the provisions of the Civil Rights Act of 1991 do not apply retroactively).

requested a ten-day extension of time to respond. Jones, by letter dated June 29, 1989, confirmed another telephone conversation with Williams wherein he expressed defendant's grant of an extension of time until July 14 in which to respond to the offer to Willis. By another letter dated June 29, 1989, plaintiff noted certain questions of Willis regarding the offer and requested a conference to discuss details of the settlement. The letter concluded:

> In order that we may facilitate the conciliation effort, I am requesting a conference with you, the Respondent's officials and the Charging Party to discuss the details of the settlement.
>
> Please contact me so that we may schedule a date and time. Thank you for your cooperation in the effort to bring this matter to a successful resolution.

Jones Affidavit, Attachment E. By letter dated July 5, 1989, defendant provided answers to Willis' questions and reiterated the need to respond by July 14:

> As we stated in our previous letter of June 29, 1989, this offer of employment remains available to Mr. Willis until July 14, 1989 at the close of business. If we have not heard from you or Mr. Willis by that time, we will consider the offer to be rejected.

*Id.*, Attachment F. Plaintiff, by letter dated July 12, 1989, acknowledged receipt of defendant's July 5 letter and additionally noted:

> In addition to Charging Party, the Commission also seeks relief for other similarly situated persons in the protected age group who were not hired. The Letter of Determination found that there was reasonable cause to believe that General Dynamics violated the Age Discrimination in Employment Act as to Charging Party and other similarly situated individuals. These individuals are entitled to back pay, benefits and an offer of a position.
>
> We are requesting a conference with you and the Respondent's officials to discuss the identity and the relief for these individuals and to give you the opportunity to provide additional information.

*Id.*, Attachment G. Jones, by letter dated July 20, 1989, notified plaintiff that:

> As the Company has repeatedly stated in the past, there is no evidence in this case that there was any intentional discrimination toward Mr. Willis because of his age. His age was not a factor when the company chose to select other candidates to fill its positions in the Internal Audit Department. The Company had no knowledge of Mr. Willis' age nor the age of other candidates. Since their ages were unknown, there cannot have been any violation of the ADEA.
>
> Based on Mr. Willis' rejection of this offer which we made in good faith to resolve this matter, the Company's efforts at conciliation are at an end. We believe the EEOC should issue a new determination of "no cause" and close this case so that the resources of the EEOC can be directed to deserving cases. If you or Mr. Willis have any response or wish to discuss the next step in this matter, you or Mr. Rooks may contact me at your convenience.

*Id.*, Attachment H. By letter dated July 26, 1989, plaintiff notified defendant that the charge file had been transferred by the acting regional attorney and district director to the office of general counsel and the commissioners in Washington, D.C., for review and determination of whether plaintiff would bring suit in the United States District Court. The letter further provided:

> ... While this process is taking place, the Commission remains open to the possibility of reaching agreement on conciliation of the individual and class issues....
>
> If the Commission determines to bring suit on this matter, you will be notified and given a final opportunity to informally resolve this matter prior to the filing of such an action.

*Id.*, Attachment I. Plaintiff, by letter dated August 10, 1989, notified defendant that it had authorized suit to be brought and that it was granting defendant "further opportunity to conciliate this matter prior to the filing of a civil action." *Id.*, Attachment J. By letter dated August 24, 1989, plaintiff notified defendant as follows:

> Please be advised that, having heard no response from you subsequent to the Com-

mission's letter of August 10, 1989, and having remained open to conciliation for what the Commission believes to be a reasonable amount of time, the Commission hereby fails conciliation in the above-referenced case.

*Id.,* Attachment K. On August 28, 1989, plaintiff filed its complaint in this action.

## IV.

### Application of Law to the Facts and Further Findings and Conclusions

■ An action for violation of the ADEA must be brought within two years of the date the allegedly discriminatory conduct occurred.[5] 29 U.S.C. §§ 255(a) and 626(e)(1). However, the limitations period is tolled for the period during which plaintiff "is attempting to effect voluntary compliance with the requirements of [the ADEA] through informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(e)(2). While defendant has the burden to show that limitations has run, plaintiff has the burden of demonstrating that tolling applies. *See Drazan v. United States,* 762 F.2d 56, 60 (7th Cir.1985); *Vaughn v. Teledyne, Inc.,* 628 F.2d 1214, 1218 (9th Cir.1980).

### A. *Limitations as to Willis' Claim:*

■ According to Willis, the last act of discrimination occurred on April 2, 1987. Therefore, the action had to be filed by April 2, 1989, unless limitations was tolled. It was not brought until August 28, 1989. Relying primarily on *EEOC v. Barrett, Haentjens & Co.,* 705 F.Supp. 1065, 1068 (M.D.Pa.1988), plaintiff takes the position that there was tolling and that it began with the issuance of the letter of determination on March 15, 1989. Although that case cites the legislative history of the ADEA for the proposition that the conciliation process begins upon issuance of a letter of violation by plaintiff, the history cited does not specify or refer to a "letter of violation." Moreover, *Barrett* also cites to *EEOC v. Colgate–Palmolive Co.,* 586 F.Supp. 1341, 1343–45 (S.D.N.Y.1984). *Colgate–Pal-*

*molive* makes clear that tolling applies only during the period that plaintiff is actively seeking conciliation. *Id.* at 1345.

As set forth, *supra,* the letter of determination issued by plaintiff stated, "a representative from the Commission's Dallas District Office will be contacting the parties to begin the conciliation process." If the letter itself was not clear enough, Williams' testimony clarifies that conciliation had not begun with issuance of the letter because, on April 4, 1989, Williams attempted to contact Jones "for the purpose of initiating the conciliation process." She did not actually contact him to begin the process until May 24, 1989. The court finds that plaintiff did not attempt to effect voluntary compliance with the requirements of the ADEA as to Willis through informal methods of conciliation, conference, and persuasion, as contemplated by 29 U.S.C. § 626(e)(2), until after the expiration of two years after April 2, 1987. Thus, the court concludes that limitations had run as to Willis' claim before such activity commenced, whether it began with a call placed on April 4, 1989, or the call on May 24, 1989. Bearing in mind that plaintiff has the burden of proof on the tolling issue, the court further finds that it is unable to find from the evidence that plaintiff's attempt to effect voluntary compliance with the requirements of the ADEA as to Willis through informal methods of conciliation, conference, and persuasion started within two years after April 2, 1987, with the consequence that the record does not provide factual basis for a conclusion that tolling commenced before the limitations period had run.

■ Defendant contends, in the alternative, that, if conciliation began as to Willis with the issuance of the March 15, 1989, determination letter, nonetheless, the action was not timely filed. Only eighteen days remained before expiration of limitations if tolling began on March 15. In that event, the action was not timely brought as to Willis' claim if conciliation ended more than eighteen days before suit was filed. As recit-

---

5. The limitations period is three years for willful conduct, which has not been alleged in this ac-

tion.

ed, *supra*, on June 20, 1989, defendant made a settlement offer to Willis through plaintiff. The time for responding to the offer was twice extended and a final deadline of July 14 was set. During June and early July, the parties actively conciliated as to Willis' claim by exchanging calls and letters regarding the settlement offer. Willis rejected the offer and, by letter of July 20, 1989, defendant notified plaintiff that it considered the conciliation efforts to be ended. The letter once again stated defendant's position that it had not discriminated against Willis on account of age and suggested the plaintiff reconsider its position. By letter of July 26, plaintiff notified defendant that the file had been transferred to Washington, D.C., for review and determination whether suit would be filed. Although the letter stated that "the Commission remains open to the possibility of reaching agreement on conciliation of the individual and class issues," plaintiff did not make any further offers or demands for settlement. Instead, it placed all the initiative for any conciliation into defendant's hands. *See EEOC v. Britrail Travel Int'l Corp.*, 733 F.Supp. 855, 860 (D.N.J.), *aff'd*, 919 F.2d 134 (3rd Cir.1990). The parties did not conciliate after July 14 when defendant's offer was rejected, and certainly not after the July 20 letter.[6] The court finds that any attempt to effect voluntary compliance with the requirements of ADEA through informal methods of conciliation, conference, and persuasion, terminated as to Willis' claim more than eighteen days before this action was filed. Therefore, the court concludes that, even if activity of that kind began on March 15, 1989, it terminated far enough in advance of the filing of the action for the action to be barred by limitations. This is so whether the activity is viewed to have terminated on July 14, 1989, or July 20, 1989. Bearing in mind that plaintiff has the burden of proof on the tolling issue, the court finds that it cannot find from the evidence that conciliation, conference, and persuasion activity of the kind contemplated by 29 U.S.C. § 626(e)(2) con-

tinued until the nineteenth day before this action was filed, with the consequence that, even if such activity had commenced March 15, 1989, there would not be evidentiary basis for a conclusion that it continued for a sufficient length of time to prevent the running of the statute of limitations before this action was filed.

**B. *Limitations as to the Claims of "Other Similarly Situated Individuals"*:**

▮▮▮ Defendant maintains that if the action was not timely brought as to Willis' claim the entire action must be dismissed because no other charge of discrimination was ever filed to support a claim on behalf of anyone other than Willis. The filing of a charge, however, is not a prerequisite to suit by plaintiff. The only statutory requirement is that, before instituting any action, plaintiff "attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of [the ADEA] through informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(b); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26, 38 (1991) (noting that plaintiff's role is not dependent on the filing of a charge of discrimination). Thus, plaintiff may assert claims for which no timely charge is filed as long as those claims fall within the two-year limitations period. *Marshall v. Chamberlain Mfg. Corp.*, 601 F.2d 100, 105 (3rd Cir.1979); *Glass v. IDS Financial Services, Inc.*, 778 F.Supp. 1029, 1051 (D.Minn.1991).

However, if plaintiff had actually attempted to conciliate the claims of other persons over a period of time, there would be a tolling of the statute of limitations as to the persons who were affected by the conciliation activity so that claims arising out of occurrences more than two years before the action was filed might be timely. 29 U.S.C. § 626(c)(2). *See EEOC v. O'Grady*, 857 F.2d

---

6. As have other courts, this court rejects the notion that conciliation fails only when plaintiff sends a letter to a potential defendant stating that conciliation has failed. *Barrett*, 705 F.Supp. at 1067; *Colgate–Palmolive*, 586 F.Supp. at 1345. Likewise, conciliation does not necessarily end when the employer says it ends. *Barrett*, 705 F.Supp. at 1074. The ADEA requires meaningful conciliation and not mere *pro forma* efforts without any substance, such as the efforts demonstrated by plaintiff in this action. *See Britrail*, 733 F.Supp. at 862.

383, 386–87 (7th Cir.1988). But, the court cannot find from the evidence in this case that such a tolling occurred as to any allegedly aggrieved party other than Willis.

The only evidence of anything that might be remotely considered to be conciliation activity on behalf of others than Willis are statements made in the previously mentioned March 15, July 12 and July 26, 1989, letters from plaintiff to defendant. Plaintiff's response to defendant's motion for summary judgment, while it outlines in detail conciliation activity related to this action, makes no mention of any conciliation activity related to the class other than to mention those letters. The response and the attachments to it make clear that all actual conciliation activities were directed to possible settlement of Willis' claim and that there were no conciliation activities related to any allegedly similarly situated individuals. The March 15 letter provides insight as to the reasons why plaintiff mentioned "other similarly situated individuals" in the various items of correspondence. In the March 15 letter plaintiff said that "there is reasonable cause to believe that [defendant] violated the ADEA as to [Willis] and any other similarly situated individuals," but went on, after proposing that conciliation commence, to advise of plaintiff's policy with respect to use in an individual complainant's case of threats of institution of action related to "similarly situated individuals":

> It is the policy of EEOC to notify all aggrieved individuals of their private suit rights under Section 7(c)(1) of the ADEA to seek appropriate legal or equitable relief. However, we will withhold notifica-

tion to all aggrieved individuals other than the Charging Party for at least ten (10) calendar days from the date of receipt of the Letter of Determination in order to provide Respondent with an opportunity to discuss this matter further.[7]

Jones Affidavit, Attachment A. Obviously, the March 15 letter did not set in motion any conciliation effort on behalf of aggrieved individuals other than Willis because the thrust of the letter was that, if defendant satisfied plaintiff's demand as to Willis' claim, plaintiff would withhold notification to other aggrieved individuals that they might have claims. Put another way, plaintiff's sole purpose in mentioning similarly situated individuals in the March 15 letter was to provide a predicate for a form of extortion calculated to force defendant to meet the demands of plaintiff and Willis as to Willis' claim. After that opening threat, plaintiff settled down to its true objective of trying to obtain a settlement satisfactory to Willis, as is reflected by the exchange of correspondence on June 20, June 22, June 29 (two letters), and July 5, 1989. The true and sole objective of plaintiff in its conciliation activities was virtually confessed in plaintiff's letter to defendant on July 29 in which plaintiff described its conciliation effort as follows:

> In order that we may facilitate the conciliation effort, I am requesting a conference with you, the Respondent's officials and [Willis] to discuss the details of the settlement.

*Id.,* Attachment E. Thus, plaintiff made clear that at least through June 29, its goal, and sole effort, was to conciliate, or force, a settlement of Willis' claim.[8] Not until after

---

**7.** Not only is plaintiff's use of "other similarly situated individuals" in the March 15 letter inappropriate because of its extortionary tone, the threat in the letter to "withhold notification to all aggrieved individuals other than [Willis] for at least ten (10) calendar days from the date of receipt of [this letter] in order to provide [defendant] with an opportunity to discuss this matter further" is misleading in its inference that plaintiff had knowledge of the identities of other "aggrieved individuals" at that time. The record reflects that despite repeated requests, beginning with its first set of interrogatories served shortly after the suit was filed in August 1989, by defendant for the names of persons allegedly aggrieved, plaintiff refused to provide any names

until November 15, 1991, one month before trial. Transcript of December 12, 1991, hearing (hereinafter "12/12/91 Tr."), 76. When questioned very pointedly by the court about the failure to provide the requested information, plaintiff's counsel responded in an evasive manner, ultimately relying on the excuse discredited by the Fifth Circuit that plaintiff did not have to provide information because defendant could gain the information sought from its own records. *Id.,* 55, 74–83, 86–89, 92–93; *EEOC v. General Dynamics Corp.,* 999 F.2d at 118.

**8.** Plaintiff was apparently under considerable political pressure, or at least considered itself to be pressured, to resolve Willis' claim on a basis

defendant made known that it was serious about not increasing its settlement offer as to Willis' claim and that there was an absolute deadline on acceptance of the offer did plaintiff again raise the specter of "other similarly situated individuals." In response to defendant's July 5 letter, plaintiff tightened the vise by again threatening claims by other persons and, for the first time, suggesting something that conceivably could be viewed as a suggestion of conciliation relative to "other similarly situated individuals." The text of this letter, in its entirety, is as follows:

> This acknowledges receipt of your letter dated July 5, 1989 and received by us on July 10, 1989 in reply to specific questions relating to the offer made to Mr. William H. Willis, Jr. Your response has been communicated to Mr. Willis.
>
> In addition to Charging Party, the Commission also seeks relief for other similarly situated persons in the protected age group who were not hired. The Letter of Determination found that there was reasonable cause to believe that General Dynamics violated the Age Discrimination in Employment Act as to Charging Party and other similarly situated individuals. These individuals are entitled to back pay, benefits and an offer of a position.
>
> We are requesting a conference with you and the Respondent's officials to discuss the identity and the relief for these individuals and to give you the opportunity to provide additional information.
>
> Please contact me so that we may schedule a mutually convenient date and time for the conference.

*Id.,* Attachment G. The final mention of claims of persons other than Willis was in plaintiff's July 26 letter to defendant in response to defendant's letter advising that "[b]ased on Mr. Willis' rejection of this offer which we made in good faith to resolve this matter, the Company's efforts at conciliation are at an end." *Id.,* Attachment H.

The court cannot find from the evidence in this case that prior to the filing of this action plaintiff engaged in any genuine attempt to effect voluntary compliance with the requirements of the ADEA as to anyone other than Willis through informal methods of conciliation, conference, and persuasion, as contemplated by 29 U.S.C. § 626(e)(2). Therefore, the court concludes that plaintiff has not established that there has been any tolling of the statute of limitations as to the claims of any of the persons plaintiff has referred to in its amended complaint as "other similarly situated persons" and "other similarly situated applicants." Amended Complaint at 1, 3, 4. Therefore, the claims of all such persons based on conduct occurring more than two years before this action was filed on August 28, 1989, are barred by limitations. *EEOC v. O'Grady,* 857 F.2d at 387.

## V.

### *The Remaining Conciliation Issues to be Resolved*

The remaining conciliation issue to be resolved is whether before instituting this action plaintiff attempted as to the claims of "other similarly situated persons" or "applicants" "to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of [the ADEA] through informal methods of

---

satisfactory to him. The record reflects that plaintiff had initially issued a determination that there was no cause to believe that defendant had violated the ADEA. Defendant's Brief Regarding Whether Relief can be Sought for any Person not Named as a Party (hereinafter "defendant's 9/6/91 brief"), Exhibit "B"; 12/16/91 Tr., 222; defendant's Exhibit "1" at 12/12/91 hearing, Plaintiff's Response to Defendant's First Set of Interrogatories, interrogatory No. 5. Willis appealed from that determination to the Determinations Review Program in Washington, D.C. He then embarked upon a letter writing campaign to various congressmen to put pressure on plaintiff to change its determination that there

had been no discrimination. *See, e.g.,* defendant's 9/6/91 brief, Exhibit "D", letter of Lloyd Bentsen. Apparently as a result of Willis' strategy, plaintiff completely reversed its position and on March 15, 1989, issued a "determination" that defendant had violated the ADEA not only as to Willis but as to a class of unnamed persons as well. Political pressure is the only plausible explanation for plaintiff's about-face. None of the evidence adduced at trial or otherwise disclosed in the record supports the March 15 determination. Certainly, there is no reason to believe that Willis would have been a suitable candidate for employment by defendant or any other employer.

conciliation, conference, and persuasion." 29 U.S.C. § 626(b). For the reasons given above, the court finds that there was no genuine activity of that kind. The token mentions plaintiff made of the claims of persons other than Willis' were not real efforts to conciliate its claims but amounted to nothing more than attempts to force defendant to settle Willis' claim on his terms.

 The ADEA's conciliation requirement is not jurisdictional. *Marshall v. Sun Oil Co. (Delaware),* 605 F.2d 1331, 1337 n. 8 (5th Cir.1979); *Brennan v. Ace Hardware Corp.,* 495 F.2d 368, 376 (8th Cir.1974). The court has broad equitable discretion under 29 U.S.C. § 626(b) to "grant such legal or equitable relief as may be appropriate to effectuate the purposes" of the ADEA. *Brennan,* 495 F.2d at 376. Because dismissal of the action would unfairly penalize the allegedly injured applicants by conditioning their right to relief on events beyond their control, the better course is to stay the proceedings to allow exhaustion of the conciliation requirement. *See Vance v. Whirlpool Corp.,* 707 F.2d 483, 489 (4th Cir.1983), *cert. denied,* 465 U.S. 1102, 104 S.Ct. 1600, 80 L.Ed.2d 130 (1984); *EEOC v. Pet, Inc.,* 612 F.2d 1001, 1002 (5th Cir.1980) (stay appropriate in a Title VII case).

## VI.

### *Stipulations Regarding Similarly Situated Persons*

In their March 30 joint report, the parties identified twelve persons as job applicants similarly situated to Willis, to wit: Theodore Atkins, Dennis Baken, Nancy Berger, Jonathan Foster, William Guenther, Dennis Haisten, Gerald Jones, Albert Koenig, Arvin Prebelski, John Robinson, John Snoble, Russell Thompson, and Harvey Wolfson. Plaintiff contends, and the court agrees, that since those persons were identified in pretrial discovery, they should be considered as potential claimants in this action. The parties have agreed, in order to resolve limitations issues, to dates of accrual of action of each of the similarly situated persons. These dates are set forth in the attachment to the March 30 joint report. According to the list pre-

pared by the parties, the claims of Nancy Berger, John Robinson, and Russell Thompson accrued prior to August 28, 1987, and are, therefore, barred. *See* discussion, *supra,* 1164–67. Thus, the claims to be conciliated are the potential claims of Theodore Atkins, Dennis Baken, Jonathan Foster, William Guenther, Dennis Haisten, Gerald Jones, Albert Koenig, Arvin Prebelski, John Snoble, and Harvey Wolfson. Of course, to whatever extent any of them has a claim that accrued prior to August 28, 1987, such claim is barred.

## VII.

### *Order*

The court ORDERS, ADJUDGES, DECREES and DECLARES that:

(1) The claims asserted by and on behalf of William Willis, Nancy Berger, John Robinson, and Russell Thompson be, and are hereby, are barred by limitations for the reasons set forth in this memorandum opinion and order; that William Willis, Nancy Berger, John Robinson, and Russell Thompson take nothing on their claims against defendant; and, that such claims be, and are hereby, dismissed; and

(2) Any claims asserted by or on behalf of other similarly situated individuals Theodore Atkins, Dennis Baken, Nancy Berger, Jonathan Foster, William Guenther, Dennis Haisten, Gerald Jones, Albert Koenig, Arvin Prebelski, John Robinson, John Snoble, Russell Thompson, and Harvey Wolfson based on conduct occurring more than two years prior to the filing of this action on August 28, 1989, be, and are hereby, barred by limitations; that these individuals take nothing on any claims they might have against defendant accruing prior to August 28, 1987; and, that such claims be, and are hereby, dismissed. The court further ORDERS that:

(1) This action be, and is hereby, stayed until 4:30 p.m. on August 5, 1994, so that the parties may conciliate the potential claims of Theodore Atkins, Dennis Baken, Jonathan Foster, William Guenther, Dennis Haisten, Gerald Jones, Albert Koenig, Arvin Prebelski, John Snoble, and Harvey

Wolfson that are not barred by limitations; and

(2) By 4:30 p.m. on August 12, 1994, the parties file a joint report detailing the conciliation efforts made by them and the outcome of such conciliation efforts.